GUSTAV A. REIMERS v. PROCTOR PUBLISHING COMPANY.

Submitted December 4, 1913—Decided February 24, 1914.

1. A deceased workman took an automobile which was in use by his employers for the purpose of distributing their newspapers; he had been ordered not to use the automobile, just before he took it out. *Held,* that his representative could not recover compensation for his death under the act of 1911.
2. The burden of proving that death was caused by accident arising out of and in the course of his employment, is under the Workmen's Compensation act of 1911 upon the petitioner, and where the physician in attendance refuses to state that death was caused by the accident, there is no basis for an inference to that effect by the court.

On *certiorari* to Hudson Pleas.

Before Justices SWAYZE and BERGEN.

For the plaintiff, *Lazarus & Brenner.*

For the defendant-prosecutor, *Robert J. Bain (Collins & Corbin* on the brief).

The opinion of the court was delivered by

SWAYZE, J. This is a proceeding under the Workmen's Compensation act taken by the father of the decedent, an unmarried man. No executor or administrator qualified. We see no objection to the father initiating the proceeding. *Pamph. L.* 1911, *p.* 142, *pl.* 19.

The principal question in the case for us is whether there was evidence justifying an inference that the death was by accident arising out of and in the course of the employment. There was evidence justifying an inference that the decedent was employed by the defendant as a general utility man, and that among his duties was the distribution of newspapers. He had at one time used an automobile of the de-

fendant and had met with an accident which damaged the machine. The defendant then borrowed an automobile, and its president and one of his sons who was in its employ, both forbade decedent to use the car. Nevertheless, he used it frequently to distribute the newspapers. There is no evidence that anyone except the president had authority to authorize its use, but the use was so frequent and so public that if there was nothing more in the case, the trial judge would have been justified in finding that the decedent was authorized to use it notwithstanding the prohibition. The difficulty is that both the president and his son testified that the decedent had been told not to use the car on the day the present accident happened. The son, in particular, told him, just before he went out, to let the car alone. There is no conflicting evidence on this point, and if these witnesses are to be believed, the decedent took the car on the occasion when the accident happened in disobedience of express orders just received. If there was authority to use it before there was a revocation. A similar question has recently been passed on by the House of Lords under the English act, and recovery denied. *Barnes* v. *Nunnery Colliery Co.* (1912), *A. C.* 44.

If this difficulty could be surmounted there would be further difficulty in holding that there was evidence justifying a finding that the death was due to the accident. The accident happened October 4th. Decedent had a compound fracture of the skull. He was discharged October 30th as improved. He returned to the dispensary from time to time for dressing and redressing; was readmitted November 12th, and discharged December 5th as improved. This was the hospital record. The attending surgeons at the hospital testified that decedent got well. On December 7th he was taken with headache and vomiting. The attending physician testified that he could not give the cause of death; that he could not state whether there was anything in the nature of the injuries to produce vomiting; that vomiting could be caused by compound fracture of the skull; that pressure on the brain would cause vomiting, or vomiting might come on

from indiscretion in eating, or from several causes. Another surgeon who had had charge of decedent at the hospital testified that his head had practically healed, three or four weeks as he guessed prior to death; the witness saw him just at the point of dissolution, and says he could not give the cause of death and did not think he could do so if he had been there sooner. The witness saw nothing particularly wrong about his head when he returned to the hospital and gave the decedent directions when he was discharged from the hospital the second time to be prudent in his eating. He said it was possible that the vomiting might have been caused by indigestion or by the injury to the head. He also testified that there was nothing about the boy's brain to indicate what the cause of death actually was. We think the furthest this testimony goes is to show a possibility that the death was due to the accident. Where the doctors refuse to state that death was caused by the accident, there is no basis for an inference to that effect by the court. The burden of proof is in accordance with the ordinary rule upon the petitioner. That the legislature did not mean to shift it to the defendant in a case like the present is shown by the fact that in the very same paragraph (section 2, placitum 7) it expressly enacted that the burden of proof that injury or death was intentionally self-inflicted, or that intoxication was the natural and proximate cause of the injury shall be upon the employer. *Expressio unius est exclusio alterius.*

The judgment must be reversed, without costs, and the record remitted for a new trial.